UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAYRADO WALLER, MARCIA WALLER<br><br>        Plaintiffs,<br>   v.<br><br>CITY OF MIDDLETOWN, MARK DEL MAURO, NICHOLAS PUORRO, WILLIAM HERTLER, DOUGLAS CLARK, FRANK SCIRPO<br><br>        Defendants. | 3:11-CV-01322 (CSH)<br><br>February 24, 2015 |

## RULING ON DEFENDANTS' MOTION FOR RECONSIDERATION

**HAIGHT**, Senior District Judge:

Defendants have filed a motion for reconsideration of the Court's Ruling on Motions for Summary Judgment, dated September 29, 2014.  Doc. [119].  For the reasons stated herein, Defendants' motion for reconsideration is granted in part, and denied in part.

### I.  BACKGROUND

The facts relevant to this lawsuit were set forth in the Court's September 29 Ruling, reported at 2014 WL 4843681, familiarity with which is assumed.  Plaintiffs are Jayrado and Marcia Waller.[1] Defendants are the City of Middletown ("City") and Middletown Police Officers Mark Del Mauro, Nicholas Puorro, Douglas Clark, William Hertler and Frank Scirpo.  The lawsuit stems from the Officers' entry and search of Jayrado's apartment while attempting to apprehend the suspect of a violent crime named in an arrest warrant who they thought (incorrectly) was present and residing in

---

[1]Based on the allegation set forth in Plaintiffs' amended complaint, Marcia Waller is a party to this action because she was appointed as Jayrado's conservator by Connecticut's Probate Court. Doc. [48] at ¶ 7.

Jayrado's home.

As set forth in the Court's September 29 Ruling, Plaintiffs charge the Officers, in Count One of the amended complaint ("complaint"), and the City, in Count Two, with deprivation of Jayrado's rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches or seizures, in violation of 42 U.S.C. § 1983. In Count Three, Plaintiffs charge the Officers with deprivation of Jayrado's parallel rights to be free from unreasonable searches or seizures under Article First, § 7 of the Connecticut Constitution. In Counts Four and Five, Plaintiffs charge the Officers with trespass and intentional infliction of emotional distress, respectively. Finally, in Count Six, Plaintiffs charge both the Officers and the City with negligent infliction of emotional distress. Doc. [48]. The Court's September 29 Ruling resolved Defendants' motion for summary judgment on those claims as follows:

- Count One (against Officers): Denied as to Officers Clark, Del Mauro, and Puorro; Granted as to Officers Hertler and Scirpo.

- Count Two (against City): Denied.

- Count Three (against Officers): Denied as to Officers Clark, Del Mauro, and Puorro; Granted as to Officers Hertler and Scirpo.

- Count Four (against Officers): Denied as to Officers Clark, Del Mauro, and Puorro; Granted as to Officers Hertler and Scirpo.

- Count Five (against Officers): Denied.

- Count Six (against City and Officers): Granted.

Defendants filed the instant motion for reconsideration, objecting to the Court's Ruling denying their motion for summary judgment with respect to counts one through five of the complaint.

## II.  DISCUSSION

### A

Motions for reconsideration require the moving party to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order."  D. Conn. L. Civ. R. 7(c)(1).  "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).  The standard is "strict and reconsideration will generally be denied unless the moving party can point to controlling decision or data that the court overlooked." *Shrader v. CSX Trans, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision. *Id.*

Defendants' objections to the Court's decision denying the Officers' motions for summary judgment on Counts One, Three, Four and Five of the complaint, principally reiterate arguments made on the lost motion.  Accordingly, the motion for reconsideration will be denied as to Counts One, Three, Four, and Five.  The Court concludes, however, that reconsideration of its Ruling denying the City's motion for summary judgment on Plaintiffs' Section 1983 claim against the City (asserted in Count Two) is necessary in order to correct a clear error or prevent manifest injustice.

In its prior Ruling, the Court concluded, with respect to Plaintiffs' Section 1983 claims against Clark, Del Mauro, and Puorro, there are genuine issues of material fact concerning whether their "protective sweep" of Jayrado's apartment — which allegedly resulted in damage to some of his personal effects — was reasonable and without malice. *Waller v. City of Middletown,* No.

11cv01322 (CSH), 2014 WL 4843681, at *9 (D. Conn. Sept. 29, 2014). Because that claim survived against those officers, the Court went on to consider Plaintiffs' *Monell* claim against the City asserted in Count Two of the complaint. The Court concluded that there are genuine issues of material fact as to whether the Officers were trained on the constitutional limitations of protective sweeps, and denied the City's motion for summary judgment as to Count Two. 2014 WL 4843681, at *12-14.

The City objects to the Court's ruling on Count Two, arguing that the Court erred in the following principle respects: by concluding that the complaint states a valid *Monell* claim; by concluding that the complaint alleges a viable theory of municipal liability; and by concluding that there is no colorable evidence in the record establishing that the Officers were trained on the constitutional limitations of protective sweeps. As discussed *seriatim, infra*, none of the arguments raised by the City warrant reconsideration of the Court's prior Ruling. However, based on a reassessment of the record evidence and review of controlling authority not fully considered at summary judgment, the Court concludes that the record does not contain sufficient evidence to sustain Plaintiffs' *Monell* claim.

**B**

The City's first objection to the Court's September 29 Ruling denying its motion for summary judgment as to Count Two is based on an error it perceives in the Ruling's concurrent disposition of the City's motions to dismiss Count Two and for summary judgment on that count. Noting that the Court's discussion in the prior Ruling focused almost exclusively on whether Count Two survives the City's motion for summary judgment, the City claims that the Court erred in failing to conclude that Count Two does not state a *Monell* claim. That criticism is not well-founded.

In support of their *Monell* claim, Plaintiffs allege that the Officers "conducted a search of

Waller's apartment," "overturned Waller's mattress and searched through various drawers and containers within the apartment," *id.* at ¶ 23, "damaged several items of Waller's personal property and damaged the apartment, for which Waller was billed by the landlord," *id.* at ¶ 24, "destroyed Waller's Xbox 360 videogame system, accessories and games, which was valued at more than $500," *id.* at ¶ 31, and "made no offer to pay for the extensive damages they had caused," *id.* at ¶ 28. Plaintiffs allege that the City is liable for the Officers' conduct because it, *inter alia*, "failed to train its Officers to understand that entry into a private home to execute an arrest warrant, but without a search warrant and without exigent circumstances, is illegal *per se*." Doc. [48] at ¶ 48.b.

Viewed out of context, Plaintiffs' allegation related to the City's failure to train reveals a misstatement of law — entry into a private home to execute an arrest warrant (even without a search warrant or exigent circumstances) is not *always* illegal; rather, is lawful under certain circumstances, including, as here, where the Officers' belief that the suspect named in the arrest warrant was residing and within the residence was reasonable. *See Steagald v. United States*, 451 U.S. 2014, 221 (1981); *Payton v. New York*, 445 U.S. 573, 603 (1980). However, construing that allegation in Plaintiffs' favor, the Court liberally interprets the complaint as alleging that the City failed to train its Officers to understand that entry into a private home to execute an arrest warrant was illegal in the context of the particular circumstances alleged here. Moreover, although the complaint alleges that the City failed to train the Officers with respect to *entries* into private homes, the Court understands Plaintiffs as also averring that the City did not train the Officers with respect to the constitutional limitations of the *search* that invariably follows the entry. *See Prevost v. City of New York*, No. 13cv3760 (VEC), 2014 WL 6907560, at *6 (S.D.N.Y. Dec. 9, 2014) (affording liberal construction to plaintiff's *Monell* claim based on a theory of failure to train). The Court turns to whether the complaint,

5

construed in that fashion, states a *Monell* claim.

Local governments are only responsible for their own illegal acts and are not vicariously liable for their employees' actions under a theory of *respondent superior*. *Connick v. Thompson*, ––– U.S. –––, 131 S.Ct. 1350, 1359 (2011) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). But "[a] municipality or other local government may be liable under [Section 1983] if the government body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Id.* (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 692 (1978). Therefore, to state a Section 1983 claim against a municipality, a plaintiff is required to plead a violation of a federally protected right that was caused by the municipality's official policy or custom, or by a decision of a policymaker with final policymaking authority. *Monell v. Dep't of Social Services*, 436 U.S. at 694. Where as here, a municipality's training program is at issue, "failure to train [municipal] employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the [municipal] employees interact." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" *Connick v. Thompson*, 131 S.Ct. at 1359-60 (quoting *City of Canton*, 489 U.S. at 389).

"'[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* at 1360 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) (internal quotation marks omitted)). To establish deliberate indifference, a plaintiff must demonstrate that: (1) "a policy maker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation

either presents the employee with a difficult choice of the sort that training . . . will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of N.Y.*, 974 F.2d 293, 297-98 (2d Cir. 1992) (internal quotation marks omitted).

A city "may be deemed deliberately indifferent" where "city policy makers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick v. Thompson*, 131 S.Ct. at 1360. Notice is generally established by a pattern of similar violations; however, "in a narrow range of circumstances, a patten of similar violations might not be necessary to show deliberate indifference." *Id.* at 1361 (internal quotation marks omitted). This is where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390 (footnote omitted). "A municipality's culpability for a deprivation of rights is" nevertheless "at its most tenuous where a claim turns on failure to train." *Connick v. Thompson*, 131 S.Ct. at 1359.

Plaintiffs did not allege a pre-existing pattern of violations. Therefore, their Section 1983 claim against the City turned on the existence of a single violation demonstrating that the City was deliberately indifferent to training police officers with respect to entries and searches of private residences. To hold a municipality liable under Section 1983 without proof of a pre-existing pattern of violations, "the unconstitutional consequences of failing to train" must be "patently obvious" and an actual violation of constitutional rights must be a "highly predictable consequence" of the failure to train. *Id.* at 1361; *Prevost v. City of New York*, 2014 WL 6907560, at *7 (citing same). In *City*

*of Canton*, the Supreme Court described, by way of an example, a circumstance in which the need to train is obvious and the consequences of failing to train, highly predictable. The *Canton* Court stated:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*Canton*, 489 U.S. at 390 n. 10. It is difficult to read this passage and conclude that unlike the need to train officers on the constitutional limitations of the use of deadly force, the need to train officers on the constitutional limitations of searches of private residences conducted pursuant to the execution of an arrest warrant is not also obvious, and the consequences for not training, highly predictable.

The City cites *Connick v. Thompson*, ___ U.S. ___ 131 S.Ct. 1350, 1359 (2011), for the proposition that a "single incident is insufficient to demonstrate [notice of a training deficiency]." Doc. [120-1] at 3. Although *Connick* declined to recognize a *Monell* claim based on the single incident of liability alleged in that case, courts post-*Connick* have not read the Supreme Court's ruling as foreclosing single incident liability under appropriate circumstances.[2] *See Prevost ,* 2014

---

[2] In *Connick*, the Supreme Court held that a municipality's district attorney's office cannot be held liable under Section 1983 based on failure to adequately train prosecutors about their due process obligations to turn over exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963), unless the plaintiff demonstrates a pattern of *Brady* violations by the prosecutors. The Supreme Court reasoned that single-incident theory of liability did not apply because "recurring constitutional violations are no the 'obvious consequence' of failing to provide prosecutors within formal in-house training about how to obey the law" and prosecutors' legal judgments "about *Brady* material simply does not present the same 'highly predictable' constitutional danger as *Canton*'s untrained officer." *Connick v. Thompson*, 131 S.Ct. at 1363.

WL 6907560 at * 7 (denying City's motion to dismiss based on single incident theory where police officers allegedly received no training on the role exculpatory evidence plays in determining probable cause); *Chamberlain v. City of White Plains*, 986 F.Supp.2d 363, 392-93 (S.D.N.Y. 2013) (concluding that complaint "plausibly alleges deliberate indifference on the part of the City under the *Canton* single-incident theory," and collecting cases post-*Connick* that denied municipalities' motions to dismiss or for summary judgment based on single-incident theory of liability); *see Breitkopf v.Gentile*, No. 12cv1084 (JFB) (AKT), 2014 WL 4258994, at *22 (E.D.N.Y. Aug. 29, 2014) (stating that *Connick* "reaffirmed the viability, in a narrow range of circumstances, of the single-incident theory of liability envisioned in *Canton*") (internal quotation marks omitted)); *Vasconcellos v. City of New York*, No. 12cv8445 (CM), 2014 WL 4961441, at * 13 (S.D.N.Y. Oct. 2, 2014) (citing *Connick* for the proposition that "[a]lthough courts generally cannot infer the existence of a policy or custom from a few isolated incidents, the Supreme Court has not altogether foreclosed the possibility").

In *Chamberlain*, for example, the court considered whether plaintiff stated a *Monell* claim against the City of White Plans based on the theory that the city failed to train officers of the White Plains Police Department ("WPPD") on how to deal with emotionaly disturbed persons ("EDPs"). The court concluded that notwithstanding the absence of a "pattern of similar constitutional violations . . . ordinary necessary to show deliberate indifference," the complaint "plausibly alleges deliberate indifference . . .under the *Canton* single-incident theory." *Chamberlain v. City of White Plains*, 986 F.Supp.2d at 393 (internal quotation marks omitted). Considering whether the pleading was sufficient to state a claim within the meaning of the Second Circuit's decision in *Walker v. City of N.Y.*, 974 F.2d 293 (2d Cir. 1992), the court reasoned:

> The Amended Complaint essentially asserts that WPPD officials knew to a "moral certainty," *Walker*, 974 F.2d at 297, that WPPD officers would encounter EDPs in the course of their duties, as evidenced [in part] by the fact that the WPPD employee manual includes a section entitled "Mentally/Emotionally Disturbed Persons." . . . Furthermore, given the extreme volatility of such individuals and the need for caution when dealing with them to prevent unnecessary escalation, it is plausible that interactions with EDPs present officers with "difficult choice[s] of the sort that training . . . will make less difficult," *Walker*, 974 F.2d at 297, and that a "highly predictable consequence" of officers making the wrong choices, *Connick*, 131 S.Ct. at 1361 (internal quotation marks omitted), would be "the deprivation of a citizen's constitutional rights," *Walker*, 974 F.2d at 298.

*Id*. The Court concluded its analysis by noting that "[d]iscovery will shed light on whether WPPD policymakers were, in fact, deliberately indifferent to the constitutional rights of EDPs, but at this stage Plaintiff has made sufficient allegations for his *Monell* claim to survive the City's Motion to Dismiss." *Id.*

The court's discussion in *Chamberlain* has application here. The City, even in the absence of prior similar violations, knows to a "moral certainty," *Walker*, 974 F.2d at 297, that its officers will be required, for any number of reasons, to enter private residences, and that in some instances, they will be compelled to do so, without a search warrant or exigent circumstances. Furthermore, given that an arrest warrant does not bestow officers with unfettered authority to enter private residence in all circumstances, it is plausible that execution of arrest warrants presents officers with "difficult choice[s] of the sort that training . . . will make less difficult," *id*., and that a "highly predictable consequence" of officers making the wrong choices, *Connick*, 131 S.Ct. at 1361 (internal quotation marks omitted), would be "the deprivation of a citizens constitutional rights," *Walker*, 974 F.2d at 298. The Court therefore concludes that the prior Ruling was not improper to the extent it

denied the City's motion to dismiss Plaintiffs' *Monell* claim against the City. The complaint states a claim under the single-incident theory of liability contemplated in *City of Canton*, and recognized by the cited authority post–*Connick*.[3]

### C

Apart from the City's claim that Plaintiffs failed to state a *Monell* claim, the City argues that the Court's Ruling denying its motion for summary judgment on that claim is improper because the Court failed to recognize that Plaintiffs' *Monell* claim suffers from a different deficiency: it does not allege that the City failed to train the Officers on the constitutional limitations of protective sweeps. The City explains that "to the extent the record lacks evidence that [the City] trained its officers on protective sweeps, it is a direct result of Plaintiffs' failure to ever allege such a theory or even raise the theory in its opposition to [the City's] motion for summary judgment." Doc. [120-1] at 10.

---

[3]Although the Court recognized a *Monell* claim based on the City's failure to train, for the sake of completeness, the Court states now that it has also concluded that Plaintiffs' alternate theory of liability — that the City "ratified the officers' actions," doc. [48] at 48.a — does not support their *Monell* claim. "[M]unicipal inaction such as the persistent failure to discipline subordinates who violate civil rights [can] give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). The one-off instance of "ratification and approval" asserted in the complaint, doc. [48] at 48.a, does not suggest "persistent" "municipal inaction" and therefore does not support "an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." *Id.* (concluding that "complaint arguably satisfies the [official policy or custom] requirement . . . by alleging that the City . . . *repeatedly* condoned and even rewarded police conduct that had been adjudicated to be in violation of civil rights") (emphasis added). Nor can such a policy be inferred where, as here, the complaint does not identify a specific individual with "'final policymaking authority'" whose actions could "subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986). Furthermore, because there are no well-pleaded allegations in the complaint supporting the inference that the City employed a policy of ratifying the unlawful conduct of its officers, there is no basis to conclude that the single instance of "ratification and approval" alleged in the complaint "*caused* the [P]laintiffs any compensable injury." *Batista v. Rodriguez*, 702 F.2d at 398 (emphasis added).

That assertion is partially true. In their opposition to the City's motion for summary judgment, Plaintiffs did not contend that the City is liable based on its failure to train the Officers on protective sweeps. That omission is surprising, given that Count Two of the complaint asserts generally that the City failed to train the Officers with respect entries into residences to the extent authorized by arrest warrants, doc. [48] at 48.b, and incorporates by reference factual allegations supporting the conclusion that the Officers, once inside Apartment D-11, searched the apartment in a way that exceeded the lawful scope of their authority. *Id.* at ¶¶ 23-24, 28, 31.

When a party has a valid claim, "he should recover on it regardless of counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining defense upon the merits." 5 Charles Alan Wright, Arthur R. Miller, *Federal Practice & Procedure* § 1219 at 282 (3d ed.2004) (footnotes omitted); *Warren v. Int'l Bus. Machines Corp.*, 358 F. Supp. 2d 301, 317 (S.D.N.Y. 2005) (citing same); *see Gins v. Mauser Plumbing Supply Co.*, 148 F.2d 974, 976 (2d Cir. 1945) ("[P]articular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not."). The complaint pleads deficiencies in the City's training program with respect to entries into private residences pursuant to arrest warrants. It describes the damage the Officers caused when they entered Jayrado's apartment in the process of executing an arrest warrant, and prays for compensatory and punitive damages based partly on the damage the Officers caused to Jayrado's apartment and personal property during the course of their search. The complaint makes crystal clear that Plaintiffs seek damages based not only on the Officers' entry into the apartment, but the damage they caused to it (and Jayrado's personal property) when they searched it. In light of the well-pleaded allegations related to the damage caused by the

Officers and the City's failure to train on the constitutional limitations of entries generally, there is no basis to reasonably conclude that the City has been prejudiced by a theory of liability akin to a color of a different shade. While for purposes of their litigation strategy, the City would have preferred that Defendants pleaded every *theory* on which the City may be liable, Defendants were not strictly required to do so; rather, were required only to state a claim upon which relief can be granted. Fed. R. Civ. P. 8(a). Plaintiffs stated a *Monell* claim for the reasons discussed, *supra*.

**D**

Finally, the City objects to the Court's prior Ruling on grounds that, contrary to the Court's conclusion, the record before the Court at summary judgment established that the Officers received training on protective sweeps. It also asks the Court to consider new evidence appended to its motion for reconsideration, which it claims demonstrates that the Officers' recertification courses covered protective sweeps. Because the City has not produced any evidence establishing that evidence on which it now relies was not available to it at the time the Court rendered its prior Ruling, the Court will not consider it. *See LoSacco v. City of Middletown*, 822 F. Supp. 870, 877 (D. Conn. 1993) (declining to consider additional evidence absent showing it could not be offered at the time court issued its original decision). In any event, the Court concludes that it need not consider whether the record at summary judgment contained evidence establishing that the City trained its Officers on the constitutional limitations of protective sweeps. The critical issue before the Court at that juncture was not whether the *City* produced evidence that its training program was adequate, but whether *Plaintiffs* produced sufficient evidence establishing that the City's training was *inadequate*, that the City was deliberately indifferent to the inadequacy, and that the inadequacy actually caused a deprivation of Plaintiffs' rights. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d

113, 129-31 (2d Cir. 2004). The Court concludes that Plaintiffs have not created a genuine issue of material fact in that regard.

### E

As explained *supra*, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 109. However, in addition to establishing that a municipality's failure to train constitutes deliberate indifference, *see Walker*, 974 F.2d at 297-98, plaintiffs at the summary judgment stage must "identify a specific deficiency in the city's training program and establish that the deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional depravation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d at 129 (quoting *City of Canton*, 489 U.S. at 391). Therefore, "plaintiffs must establish that 'the officer's shortcomings . . . result from . . . a faulty training program' rather than from the negligent administration of a sound program or other unrelated circumstances." *Id.* (quoting *City of Canton*, 489 U.S. at 390-91) (footnote omitted)). Thus, deliberate evidence alone cannot establish *Monell* liability.

In *Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007), the Second Circuit explained that while the requirements for establishing a municipality's deliberate indifference toward certain types of training set forth in *Walker* "give rise to a defendant supervisor's duty to act, or more precisely, the circumstances under which a supervisors's failure to act triggers liability under § 1983 . . . [a]t later stages of litigation, a plaintiff must establish also that defendant breached its duty to act by failing to make meaningful efforts to address the risk of harm to plaintiffs." *Id.* at 192 (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d at 129-30 & n. 10 and citing *Vann v. City of N.Y.*, 72 F.3d

14

1040, 1049 (2d Cir. 1995) (allowing inference of deliberate indifference where repeated complaints are followed by no meaningful attempt to investigate or forestall incidents)). The court of appeals in *Reynolds* articulated three independent requirements that a plaintiff must meet to establish *Monell* liability:

> *Monell*'s policy or custom requirement . . .obligates plaintiffs to (1) establish state defendants' duty to act by proving they should have known their inadequate supervision was so likely to result in the alleged deprivations so as to constitute deliberate indifference under *Walker*; (2) identify obvious and severe deficiencies in the state defendants' [training program] that reflect a purposeful rather than negligent course of action; and (3) show a causal relationship between the failure to [train] and the alleged deprivations to plaintiffs

*Id.* at 193.[4] Even assuming that the single-incident liability theory implicit in the complaint could lead a factfinder to reasonably conclude that the City's failure to train constitutes deliberate indifference under *Walker*, Plaintiffs' *Monell* claim fails on *Reynolds*'s second and third prongs. Plaintiffs have not identified obvious and severe deficiencies in the City's training program that reflect a purposeful rather than negligent course of action, and cannot show a casual relationship between a training deficiency and the deprivation of their rights.

In *Amnesty*, the court of appeals considered whether plaintiffs could establish a *Monell* claim against the town of West Hartford based on the town's alleged failure to train its officers not to use excessive force in making arrests at peaceful demonstrations. In affirming the district court's denial

---

[4]Although *Reynolds* considered whether defendants were liable under Section 1983 based on a theory of inadequate supervision, the requirements for *Monell* liability articulated in that case were distilled from *City of Canton*, *Amnesty* and related cases, and apply with equal force to assessing *Monell* liability based on a theory of failure to train. *See Reynolds v. Guiliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("Although *City of Canton* addressed a claim for failure to train, the stringent causation a culpability requirements set out in that case have been applied to a broad range of supervisory liability claims.").

of the plaintiffs' failure to train claim, the court of appeals reasoned as follows:

> Plaintiffs . . . have proffered no evidence of the Town's training programs or advanced any theory as to how a training deficiency caused the police to use excessive force at the . . . demonstration. Plaintiffs' failure to train theory is based solely on their evidence that the police used excessive force on two successive occasions. *City of Canton* unequivocally requires, however, that the factfinder's inferences of inadequate training and causation be based on more than the mere fact that the misconduct occurred in the first place. . . . It is impossible to prevail on a claim that the Town's training program is inadequate without any evidence as to whether the Town trained its officers between . . . demonstrations, how the training was conducted, how better or different training could have prevented the challenged conduct, or how a hypothetically well-trained officer would have acted under the circumstances . . .

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d at 130 (footnote, citations, and internal quotation marks omitted). That language resonates here. Plaintiffs have proffered no evidence from which a factfinder could reasonably infer that there is a deficiency in the City's training program that deprived Plaintiffs of their rights, let alone evidence from which to infer specifically that the Officers were not trained on the permissible parameters of searches of private residences conducted incident to executing an arrest warrant. Nor have Plaintiffs demonstrated how "better or different training could have prevented the challenged conduct or how a hypothetically well-trained officer would have acted under the circumstances." *Id.* Furthermore, the case law expressly precludes the Court from inferring a training deficiency from the single incident of misconduct alleged here. *Id.* (citing *City of Canton*, 489 U.S. at 390-91 ("To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983") and *Dwares v. City of New York*, 985 F.2d 94, 101 (2d Cir. 1993) (stating that an allegation of an instance of police misconduct was insufficient to raise the inference that the police had been improperly trained)). There is simply no basis from

which to conclude that the City's training program was inadequate.

Moreover, apart from the lack of evidence supporting the conclusion that the town of West Hartford failed to train its officers, the court of appeals in *Amnesty* went on to identify another deficiency in plaintiffs' *Monell* claim:

> plaintiffs have provided no evidence tending to rule out those causes of the excessive force that would not support municipal liability, such as the negligent administration of a valid program, or one or more officers' negligent or intentional disregard of their training, and therefore no reasonable factfinder could conclude that the excessive force occurred as a result of training deficiencies.

*Id* (citing *City of Canton*, 489 U.S. at 390-91). The same is true here. Even if Plaintiffs had proffered sufficient evidence establishing a deficiency in the City's training program, they have not ruled out other possible causes of the Officers' allegedly unlawful search that would not support the City's liability. There is therefore no support in the record for the conclusion that the Officers were improperly trained, and that a training deficiency caused the deprivation of Plaintiffs' rights.

Notwithstanding the fact that there is some question in the record as to whether the Officers received training on the constitutional limitations of protective sweeps specifically, the record suggests the likelihood that the Officers' received adequate training on searches and seizures incident to an arrest warrant and permissible conduct under the Fourth Amendment. The Officers' Field Manual, the "Review Training Credit Reports" for each officer issued by the State of Connecticut Officer Standards and Training Council, and deposition testimony from the Officers' training instructor and the Officers' themselves, lend to the conclusion that City's officer training program as it relates to permissible searches under the Fourth Amendment was sound.

The Court's prior Ruling implicitly concluded, contrary to fact, that the record contained

sufficient evidence in support of Plaintiffs' *Monell* claim. In recognizing a genuine and material issue of fact that found no support in the record, the Court improperly saddled the City with the burden of establishing that its training program was adequate. The Court's ruling denying the City summary judgment on Count Two of the complaint will therefore be vacated and judgment will enter on that count in favor of the City.

As indicated *supra*, the Court has considered Defendants' other arguments for reconsideration and finds them to be without merit.

### III.  CONCLUSION

For the foregoing reason, the Court rules as follows:

1. Defendants' Motion for Reconsideration (Doc. #120) is GRANTED to the extent it seeks reconsideration of the Court's ruling on Count Two of the complaint, and is DENIED in all other respects.

2. The Court's ruling denying the City's motion for summary judgment on Count Two of the complaint is VACATED and accordingly, the City's motion for judgment on that Count is GRANTED.

It is SO ORDERED.

Dated:  New Haven, Connecticut
         February 24, 2015

       /s/ *Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge